E. P. I. of CLEVELAND, INC., APPELLANT, *v*. BASLER ET AL., APPELLEES.

[Cite as E. P. I. of Cleveland v. Basler, 12 Ohio App. 2d 16.]

(No. 28299—Decided October 19, 1967.)

*Messrs. Bremer, Thompson, Morhard & Coyne,* for appellant.

*Mr. Sanford W. Likover,* for appellees.

CORRIGAN, C. J. This appeal, although within the purview of Section 2501.02, Revised Code, is before us on questions of law for the reason that an appeal bond was not filed by appellant as required. The appeal is from a decree of the Court of Common Pleas of Cuyahoga County denying plaintiff's petition for a permanent injunction.

The action sought to enforce a restrictive covenant in a written employment contract by enjoining the defendant, plain-

tiff's former employee, from selling the same or similar products as sold by plaintiff for one year following termination of defendant's employment by plaintiff or from one year of the date of the court's decree, whichever date is later, within a radius of two hundred miles of the center of Cleveland, and for damages.

Three assignments of error are asserted as follows:

1. The judgment of the trial court, including its findings of fact and conclusions of law dated September 14, 1966, is manifestly against the weight of the evidence;

2. The judgment of the trial court, including its findings of fact and conclusions of law, is contrary to law.

3. The trial court committed prejudicial error in refusing to accept into evidence all the plaintiff's evidence in support of the reasonableness of the restrictive covenant.

The trial court's conclusions of fact are:

"1. The plaintiff and defendant entered into a written contract dated February 11, 1964, containing a restrictive covenant against competition if the defendant left the employ of the plaintiff.

"2. That on October 31, 1965, the plaintiff notified the defendant of the termination of his employment contract effective December 31, 1965.

"3. That the defendant, operating individually as a sole proprietorship, sold some but not all of the products after his employment was terminated by the plaintiff.

"4. That the plaintiff's business operation did not contain any unique features nor have trade secrets nor customer lists.

"5. That the plaintiff actually had not lost any customers to the defendant nor offered any proof that it would have obtained certain orders, if the defendant had not submitted a bid.

"6. That the restrictive covenant sought to be enforced by the plaintiff places an undue hardship upon the defendant.

"7. That the restrictive covenant sought to be enforced herein is greater than reasonably necessary for the protection of the plaintiff's business."

It should be noted in connection with conclusion No. 5 that testimony taken on deposition from Mr. Gates, plaintiff's employee and witness, as read into the record was as follows:

"Well he [Basler] was terminated, his employment was terminated because we felt from the standpoint of the corporation that he was not able to handle the products that we now sell."

In connection with conclusion No. 4, notwithstanding plaintiff's allegation of the unique pricing methods and cost patterns, prices submitted for bids are ascertained from costs of materials plus an added percentage for overhead and profit.

A very careful reading of the bill of exceptions compels the conclusion that there is sufficient evidence upon which to predicate the above findings of fact, and, accordingly, assignment of error No. 1 is overruled.

Upon consideration of claim of error No. 2, we must examine the conclusions of law found by the trial court, which read:

"The tests generally applied in determining the validity of a restrictive covenant is whether or not the restraint is necessary for the protection of the business or the good will of the employer and if so, whether it imposes on the employee any greater restraint than reasonably necessary to secure to the business of the employer such protection.

"A restrictive covenant in a contract that an employee, upon termination of his employment, would not within one year thereafter engage in business buying, selling, trading or otherwise dealing in any product or products similar to or competitive with products within a two hundred mile radius is greater than is required for the employer's protection and imposes undue hardship on the employee and is therefore invalid in the absence of proof of any trade secret, or any actual loss of customers or any provable loss of business."

The contract under scrutiny here contains the following restrictive covenant:

"1. Basler expressly covenants that so long as he is an employee of the Corporation, and for a period of one (1) year after termination of his status as an employee, he shall not be an employee, shareholder, director, officer, or agent of any person, partnership, company, association or corporation which buys, sells, trades or otherwise deals in any like product or products which are being sold by the Corporation, within an area

of two hundred (200) miles of the center of the city of Cleveland, Ohio.''

In our opinion this assertion of error may be broken down into three issues:

A. Whether the grounds for injunction are still valid in view of the passage of time since defendant left the employ of plaintiff.

B. Whether the restraint is needed to protect a legitimate interest.

C. Whether the restraint is a reasonable restraint.

Although the defendant does not forward a defense of mootness as a separate argument, he suggests the question in his brief where he states:

''Note the record at page 78, where the plaintiff's president says that this restraint would no longer be necessary after one (1) year from the date of the termination of employment. This matter is now before the court at least fourteen (14) months after the termination.''

Plaintiff also appears to recognize the difficulty in asking for literal enforcement of its contract when it states on page one of its brief:

''This is an action in equity brought to enforce a restrictive covenant in a written employment contract by enjoining defendant from selling * * * for one year following termination of defendant's employment by plaintiff or for one year from the date of the court's decree, whichever date is later * * *.''

Even though there seem to be no cases which treat this question directly, other cases dealing with the subject of mootness indicate that the defense would not be available in the present case. It has been held that if another issue, such as money damages, is present along with the issue of injunctive relief the appeal will not be denied because of mootness. *Dinkins* v. *Broussard* (La., 1966), 185 So. 2d 268; *State, ex rel. Brannum,* v. *Sparks* (Court of Appeals, 1954), 73 Ohio Law Abs. 544. Since plaintiff's petition requested damages ($10,000) as well as injunctive relief, the former issue would remain open even though the passage of time may render imposition of an injunction a useless act.

As to whether the restraint is necessary to protect a legiti-

20

mate interest, the initial question in any employment restrictive covenant, and the one which should be answered prior to determining the reasonableness of the restraint, is whether there is an interest present which needs protection. As stated in an article on restrictive covenants in 35 University of Cincinnati Law Review 18:

"* * * Somewhere between the bounds of no restraint and 'forever and anywhere' lies an area of restraint that will be enforced because it is reasonable and necessary in the particular situation presented. Ohio and other jurisdictions have utilized this test of reasonableness in determining how long and for how large a geographical area the restraint may operate. Before considering the validity of the terms of the contract itself, however, the courts must first satisfy themselves that a situation exists in which any contractual restraint at all should be enforced."

Even though the question of "legitimate interest" seems basic in all employee restraint cases, few courts have struck down a restrictive covenant because of failure to find such an interest. Plaintiff lists seven examples of customers lost to defendant as a result of the latter's solicitation. Defendant answers that no customers were actually lost nor was any proof offered that plaintiff would have obtained certain orders if the defendant had not submitted a bid. The lower court accepted the defendant's version of this issue and so stated in the findings of fact and conclusions of law. We find that the record supports this conclusion.

Next, we consider as to whether the restraint is reasonable. The common-law test asks whether the restraint is greater than is required for the protection of the person for whose benefit it is imposed. See II Restatement of the Law of Contracts 988, Section 515. Some writers prefer to ask whether the contract is fair to the employers, employees and the public. See 43 A. L. R. 2d 94 (1955); 73 Harvard L. Rev. 627 (1960). This latter is the view of the Ohio Supreme Court in *Extine* v. *Williamson Midwest, Inc.*, 176 Ohio St. 403, wherein paragraph one of the syllabus reads:

"1. In determining the validity of a covenant or agreement in restraint of trade, each case must be decided on its own facts,

and a reasonable balance must be maintained among the interests of employers, employees and the the public.

In the unanimous opinion in *Extine*, Herbert, J., observed, at page 406:

"In addition to the absence or presence of limitations as to time and space, when attempting to decide the reasonableness of the restraint, the courts have considered the following factors: Whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment. * * * "

The agreement in question interdicts the defendant from calling on anyone, whether or not a customer, with like products within a two hundred mile radius of Cleveland. It was admitted by Mr. Gates, as shown by the record, that the plaintiff's business was generally within a sixty mile radius. The plaintiff company did not operate regularly in ninety one per cent of the territory within the two hundred mile radius.

Plaintiff suggests that the case of *Briggs* v. *Butler* (1942), 140 Ohio St. 499, controls the instant case. *Briggs* is one of a series of cases which have been litigated in various jurisdictions by the Welcome Wagon Hostess Company (Briggs, President) with varying results. The problem is common to all the cases. Welcome Wagon hires a hostess in a city to contact newcomers on behalf of merchants in the city, trains her in the methods of acting as a hostess and then sues her on her contract when she sets up a competing company. The contract signed by those hostesses prohibits them for five years from the date of termination with Welcome Wagon, Inc., from competing in a similar business in the city where the particular hostess is locat-

ed and in any place in the United States or Canada where Welcome Wagon is operating. In the Ohio case, *supra,* the court upheld the restraint against Mrs. Butler, the former hostess, but only as applied to the city of Toledo. The court employed the "blue pencil doctrine" to strike out the remaining portion of the area restriction. It is interesting to note that the court also permitted the five-year limitation to run from the date of termination of employment and not from the date of the court's decree. This case is criticized in a federal court decision which struck down entirely an identical covenant after comparing several Welcome Wagon cases. See *Welcome Wagon, Inc., v. Morris* (1955), 224 F. 2d 693.

Briefly stated, the "blue pencil doctrine" holds that if courts can render an unreasonable restraint reasonable by scratching out the offensive portions of the covenant, they should do so and then enforce the remainder. See II Restatement of the Law of Contracts 1004, Section 518. Traditionally, the doctrine is applicable only if the covenant in question is divisible, so that the unreasonable portions may be separated.

Despite the decision in *Extine* v. *Williamson Midwest, Inc.,* 176 Ohio St. 403, Ohio is still considered to follow the traditional rule. In that case the employee salesman signed a covenant that he would not within two years after termination of employment engage in the same or similar line of business to that carried on by his employer either on his own or as an employee for another. There was no limitation as to area. The court divided the contract into four separate parts and enforced two of them against the defendant. The defendant was prohibited from soliciting his old customers and from actively diverting business from his former employers. The court said that partial restraints as modified by the "blue pencil" test should apply and that they would hold an agreement enforceable as to a "reasonable restraint providing the agreement is not so unreasonable as to preclude modification."

Even though the Ohio Supreme Court went very far in the direction of making its own reasonable contract, it must be borne in mind that they were faced with a contract which contained no area limitation. In such a situation they were free to carve out a reasonable restraint. In the instant case, however,

the terms of the covenant are far too definite for this freedom. These terms, in our opinion, are not severable and must, therefore, be judged reasonable or unreasonable as they stand. It is our determination, and we so hold, that these terms impose restrictions and limitations that are not reasonable and that are not necessary for the protection of plaintiff's business and, as such, render this agreement invalid and unenforceable.

It is our further determination, and we so hold, that the conclusions of fact found by the trial court are fully supported by the record and the conclusions of law are strictly correct. For these reasons assignment of error No. 2 is overruled.

We find no merit to assignment of error No. 3, and the same is overruled.

And finally, the decree of the trial court denying plaintiff's petition for injunction is entirely correct and is affirmed.

*Judgment affirmed.*

WHITE and ARTL, JJ., concur.