PATTERSON INTERNATIONAL CORP. *v.* HERRIN.

[Cite as Patterson International Corp. v. Herrin (1970), 25 Ohio Misc. 79.]

(No. A-250590—Decided October 6, 1970.)

Common Pleas Court of Hamilton County.

*Messrs. Melville, Strasser, Foster & Hoffman, Mr. James H. Hayes, Messrs. Bloom, Greene, Thurman & Uible* and *Mr. Milton M. Bloom,* for plaintiff.
*Messrs. Goldman, Cole & Putnick, Mr. Arthur C. Church* and *Mr. Paul H. Tobias,* for defendant.

KEEFE, J. This suit in equity was brought by the Patterson International Corporation against the defendant, Maurice J. Herrin, Jr. Plaintiff seeks injunctive relief, compensatory damages, punitive damages and a reasonable allowance for attorneys' fees.

Defendant, in his answer, counterclaim and cross-claim, asks that the complaint be dismissed, that L. C. Patterson, Jr., president of plaintiff company, be made a party in this action, that defendant be awarded compensatory damages, that he be awarded punitive damages and also that he recover a reasonable allowance for attorneys' fees.

Originally a temporary restraining order was granted by this court. For good cause shown the temporary restraining order has been extended, without objection by either party, until such time as these findings of fact and conclusions of law are filed. See Rule 65(A) of the Ohio Rules of Civil Procedure.

After the commencement of the hearing on the application for a preliminary injunction this court ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application. This order was made by the court pursuant to its authority under Rule 65(B)(2).

At the time I ordered consolidation of the hearing on the application for a preliminary injunction with trial on the merits counsel for the parties made no request of any kind for a jury trial for those parts of their cases to which they were entitled to a jury. Since there was no demand or motion for a jury and since the new civil rules provide that issues not demanded for trial by jury be tried by the court, the trial in this matter following the court's order of consolidation was without a jury. See Rules of Civil Procedure numbers 38 and 39.

It is noted parenthetically that there is no cause to suppose that the parties were dissatisfied with the trial of the action on the merits without a jury but it was my determination that if they wanted a jury under the new rules of civil procedure the parties had an obligation to demand one after the court ordered that the trial be on the merits.

There being nothing presented by Mr. L. C. Patterson, Jr., or his counsel which could reasonably be construed as any objection to his being included as a party in this action this court, and apparently the original parties, did consider him as a party. Rule 21.

In its complaint, plaintiff, Patterson International Corporation, hereinafter abbreviated P. I. C., seeks to enforce a restrictive covenant contained in an agreement entered into between the plaintiff and Maurice J. Herrin, Jr., defendant, on January 2, 1969. Plaintiff is engaged in the

promotion and sale of coin-operated soccer games including one known as "foosball." Defendant commenced his employment with plaintiff on or about January 2, 1969, and prior to that time defendant had no knowledge of the plaintiff's methods of business operations, suppliers or customers.

In the contract of January 2, 1969, the defendant agreed to the following:

5. Employee shall not, either during or after termination of his employment by employer (whether such termination be with or without cause), divulge to any person, firm or corporation, or use on his own behalf, any information, acquired by him during his employment, concerning employer's trade secrets, methods of operation, suppliers, and customers Upon termination of his employment, employee shall deliver up to employer all notes, records, memoranda, complete correspondence files and other papers (in English or any other language) relating to employer's trade secrets, methods of operation, suppliers and customers.

6. Employee shall not, during the period of his employment by employer and for a period of eighteen (18) months following termination of his employment (whether such termination be with or without cause), either for himself or on behalf of any person, firm, or corporation, directly or indirectly, and in competition with employer:

(a) solicit, or attempt to divert from employer, the business of any of employer's customers or suppliers; or

(b) Engage in a business similar to employer's in any of the following areas: [45 states listed.] and such other areas in which employer may establish business relations during the period of employee's employment.

7. If employee breaches or threatens to breach any of the terms of paragraph 5 or 6 above, employer shall be entitled to apply to any court of competent jurisdiction for an injunction against such breach, actual or threatened.

During the month of June 1970, defendant was absent from his employment for eight days. Although he generally disputes that he was absent that many days his testimony revealed a vagueness as to the exact number of days

and the dates upon which the absences occurred. The greater weight of the evidence on this subject establishes that the defendant was absent eight days in June. Each time after defendant's absences on June 10, 11, 12 and 17, 18 and 19 plaintiff's president, L. C. Patterson, Jr., indicated to the defendant Mr. Patterson's disapproval of his absences and instructed him not to repeat them or else defendant's employment with the plaintiff corporation would be in jeopardy. On June 29 and 30 the defendant again failed to report for work but late on the afternoon of June 30 defendant telephoned Mr. Patterson and made statements which indicated that he realized that his job was in jeopardy, asked Mr. Patterson if he could talk to him to which Patterson agreed and the defendant went to the plaintiff's office and met with Mr. Patterson. At that time, either during the telephone conversation or in the subsequent meeting, Mr. Patterson explained to defendant that he had that day sent defendant a telegram which read as follows:

"Unless our property is returned by 12 noon on Wednesday, July 1, it will be necessary to follow our attorney's advice and to take legal action to recover the property."

The evidence clearly establishes that when the defendant talked with Mr. Patterson on June 30 and also on the following day when defendant returned to plaintiff's office to return some property, defendant realized that his employment situation with the plaintiff company was precarious. During the course of the conversation between Mr. Patterson and defendant on July 1, the subject of defendant's loyalty to plaintiff company arose. It is difficult to determine the source of the original reference to loyalty. However, it is unnecessary to decide who brought up the topic. It is a fact that after the subject of loyalty was mentioned, the defendant disclosed that he had been importuned at some previous time to sell the names of plaintiff's customers to a competitor or competitors. This, he reported to Mr. Patterson, he had refused to do. It must be closely noted that the subject of the invited sale of trade secret information to others was brought up by the defendant

himself on July 1. Obviously it was an attempt on the part of the defendant to gain favor with Mr. Patterson and hopefully to cause Mr. Patterson to change his mind about dismissing defendant because of his eight days absence in June.

After defendant made known the telephone call which he had received asking him to be disloyal to his employer, Mr. Patterson readily saw in defendant's disclosure the availability of evidence which Mr. Patterson believed could be helpful to him in a pending law action, the general subject matter of which had to do with unfair business practices. On July 1, at this juncture, unquestionably the defendant was trying to recover his job and Mr. Patterson wanted a statement from the defendant about the telephone call. There was verbal sparring between them and undoubtedly some heated exchanges. Without here going into the details, which the trial record reflects, the defendant did not provide Mr. Patterson with such a written statement as the latter wanted. When defendant left the plaintiff's office on July 1, he knew that his employment with the plaintiff was at an end. Defendant has never returned to his former place of employment with P. I. C.

The defendant contends that Mr. Patterson, in his capacity as president of the plaintiff company, on July 1, did order and instruct the defendant to violate the law and make false statements, commit perjury and try to ''bribe'' him. Defendant maintains that because he refused to commit perjury and accept ''bribe'' offers, Mr. Patterson ''wrongfully and maliciously discharged defendant.'' The defendant contends that consequently he was freed of any obligations under the contract of January 2, 1969.

The defendant does not deny and the evidence graphically reveals that after July 1, 1970—the date of defendant's discharge from the plaintiff company—the defendant continued to contact customers of the plaintiff known to defendant only by reason of his employment with plaintiff. The defendant, since July 1, has received remuneration from customers of the plaintiff in an amount exceeding $1300.00. Defendant himself does not deny that approxi-

mately $1100.00 of this amount has been received by him as payments from customers. The defendant contends that $210.00, which he admits he received as a result of a transaction between a Mr. Bollinger and a Mr. Slusher, came to him not as a business payment but simply as a gratuity. I am not making a decision as to the exact nature of the $210.00 payment because it is unnecessary to do so in view of the conclusions which this court reaches in this matter. There is no question that the defendant did receive approximately $1100.00 in payments since his last day of employment with plaintiff.

Plaintiff here (the employer) has proven that the contract with which we are concerned is valid, that is, the restraint imposed by its terms is reasonable and is no greater than is necessary to protect the employer's legitimate interests. Plaintiff has also established that it has suffered irreparable injury either actual or threatened from the breach. See *Extine* v. *Williamson Midwest, Inc.*, 176 Ohio St. 403, and *Briggs* v. *Butler*, 140 Ohio St. 499.

Defendant's discharge on July 1, 1970, resulted from eight days unjustified absence in the month of June, 1970, and not because of disloyalty and not because defendant refused to perjure himself. It must be emphasized that the entire subject of the sale of company secrets was first developed by defendant himself. Plaintiff had cause for dismissing defendant.

This court finds that neither the eighteen-month restriction nor the area restriction (taking into consideration the nature of plaintiff's business) is unreasonable or in contravention of the public interest. In determining that the portions of the agreement which are restrictive in nature are reasonable I have considered that when the defendant signed his agreement with the plaintiff, he had had no prior special training or experience in the business area in which plaintiff is active. Defendant's area of employment prior to January 2, 1969, seems to have been one of general sales, and since July 1, 1970, when defendant's employment with plaintiff was ended, he has resumed a general sales career with two different employers. As

remunerative as his employment with the plaintiff may have been for the relatively short period of time he was an employee of P. I. C., nevertheless it is obvious that defendant had not with any particularism devoted himself to a vocation of selling coin-operated soccer games. From the nature of his jobs before and after his association with P. I. C. there was no such attachment to or career preoccupation with coin-operated soccer games that he cannot reasonably find employment fulfillment elsewhere. Each case must be decided on its own facts in determining the validity of a covenant or agreement in restraint of trade and I agree that if defendant were a coin-operated soccer game technician with special training and long years of experience, the decision on the legal significance of the restrictions contained in the January 2, 1969, agreement could be otherwise.

Plaintiff is entitled to a permanent injunction against defendant to enforce the agreement of January 2, 1969.

Plaintiff asks for an accounting from defendant for defendant's profits accruing from his conduct. Defendant has received profits since his discharge. Equitable principles required the plaintiff company to provide defendant with two weeks pay when it terminated his employment. This was not done. So far as the parties' cross-claims for compensatory damages are concerned this court has made a sincere attempt to balance the equities and it is leaving the parties where it finds them—in this respect.

With regard to all claims for punitive damages and attorneys' fees, there is an absence of proof which would justify a money judgment in any amount.

This opinion constitutes the court's findings of fact and conclusions of law.

*Judgment accordingly.*