**PREMIER INDUSTRIAL CORPORATION, Plaintiff-Appellee,**

v.

**TEXAS INDUSTRIAL FASTENER COMPANY, Defendant-Appellant,**

**Ed Roos, Intervenor-Appellant.**

**No. 71–1093.**

United States Court of Appeals, Fifth Circuit.

Nov. 4, 1971.

---

Jack R. Bailey, Houston, Tex., for defendant-appellant and intervenor-appellant.

William E. Wright, Robert W. B. Dickerson, Houston, Tex., for appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Premier Industrial Corporation, an Ohio corporation, (Premier), brought this action against Texas Industrial Fastener Company (TIFCO), a Texas corporation, and Ed Roos, seeking specific performance and other relief under an employment contract between Premier and Roos and a Settlement Agreement executed by the corporate parties in January and February of 1969. The lower court granted the requested relief. Error in its judgment is not demonstrated. Hence we affirm, with a slight modification.

Premier and TIFCO are business competitors engaged in commerce in Nebraska and other states. They engage in sales distribution of the same and similar products, i. e., industrial fasteners and automotive parts. During the several years prior to this action, TIFCO had hired several sales agents of Premier whose contracts of employment with Premier contained covenants not to compete. These covenants each provided that ex-employees would not associate in any way with any business in competition with Premier for a period of two years after termination of their employment contracts with Premier within the geographical sales area defined in the contracts.

TIFCO's proselyting of Premier's sales agents became the subject of several lawsuits brought by Premier to enjoin the employment by TIFCO of Premier's sales agents under anti-competition covenants. Finally, in January of 1969, the corporate parties to this suit entered into the aforementioned Settlement Agreement. In consideration of Premier's agreement to dismiss with prejudice a damage suit pending against TIFCO in the Harris County, Texas District Court for tortious interference with the contractual relationships of Premier with its sales agents, TIFCO agreed, *inter alia*, to no longer hire, employ or utilize in any manner any employee or ex-employee of Premier in a manner so as to violate valid[1] anti-competition covenants in his employment contract or to cause, induce, or procure any employee of Premier to violate said covenants.

The present action was precipitated by the hiring of one Ed Roos, a Premier employee, by TIFCO in January 1969.[2] Roos had been a sales agent of Premier in Douglas County, Nebraska. The covenants not to compete in Roos' employment contract with Premier were limited to two years and to Douglas County. Roos continued to work in Douglas County after being employed by TIFCO, selling TIFCO's line of products. Premier formally terminated Roos' employment in March 1969, and instituted this

---

1. Validity was defined by the agreement as restrictions no broader than two years in duration and encompassing no larger territory than the county or other subdivision in which the employee actually performed services for Premier.

2. The Settlement Agreement was under negotiation at the time.

action against TIFCO in October 1969.[3] At trial, TIFCO relied on two arguments to avoid liability under the Settlement Agreement: (1) that it had hired Roos prior to the execution of the Settlement Agreement, and that thus the hiring of Roos was not covered by the agreement; and (2) that at the time it hired Roos TIFCO was unaware of any restrictive covenants in Roos' contract with Premier. Roos had signed a statement declaring that he was not subject to any covenants against competition in his contract with Premier. TIFCO essentially argued that this misrepresentation by Roos excused it from any liability for violation of the Settlement Agreement. Roos defended on the basis of the invalidity and unenforceability of the covenants, and intervened in the action, asking for injunctive relief.

The trial court held that it had jurisdiction of the case, and as to TIFCO:

1. that the Settlement Agreement was valid and enforceable;

2. that TIFCO willfully breached the agreement; and as to Roos:

1. that Premier's contract with Roos was executed without fraud, accident or mistake, was supported by consideration and mutuality, and that the terms of the contract were not vague or ambiguous;

2. that Premier had a valid economic interest to protect;

3. that the provisions of the covenants were reasonable, did not violate public policy or constitute an illegal restraint of trade; and

4. that Roos directly violated his contract with Premier.

In its final judgment, the trial court (1) enjoined TIFCO until January 1, 1972 from utilizing Roos' services in such a manner as to violate his anti-competition covenants with Premier; (2) ordered TIFCO to specifically perform the Settlement Agreement; (3) enjoined Roos until January 1, 1972 from violating his

covenants with Premier; and (4) awarded Premier attorney's fees as provided in the agreement. TIFCO and Ed Roos both appealed.

■■ On appeal, the appellants initially contend that the $10,000 jurisdictional amount required in diversity cases (Title 28, U.S.C., Section 1332) was not proven below.

The court below found that:

"Though sums in controversy in both the main action and the intervention were not clearly delineated as being in excess of $10,000 the Court finds that notwithstanding, the Court has jurisdiction."

Appellants claim that this finding does not meet the requirements of Title 28, U.S.C., Section 1332. We disagree. This action was brought in equity, which by its very nature presupposes the difficulty of ascertaining actual damages. The value to the plaintiff of the rights he is seeking to protect is the measure of jurisdiction in equity cases, even though the value of that right may not be capable of exact valuation in money. See Hedberg v. State Farm Mutual Auto. Ins. Co., 8 Cir. 1965, 350 F.2d 924; accord, Seaboard Finance Co. v. Martin, 5 Cir. 1957, 244 F.2d 329; also see, Dosdall v. Fraser, D.Mont.1965, 246 F.Supp. 311; Zep Mfg. Corp. v. Haber, S.D.Tex.1962, 202 F.Supp. 847; Burndy Corp. v. Cahill, D.Minn.1961, 196 F.Supp. 619. Nor has it been overly difficult in the past for federal courts to find the requisite jurisdictional amount in actions brought to enforce covenants not to compete. See, e. g., Hedberg v. State Farm Mutual Auto. Ins. Co., supra; National Chemsearch Corp. of N. Y. v. Bogatin, E.D.Penn.1964, 233 F. Supp. 802, vacated on other grounds, 3 Cir. 1965, 349 F.2d 363. The court below could have found the presence of the requisite amount in controversy as well as irreparable injury upon each of a

---

3. Premier originally sought relief only against TIFCO. Roos, however, then filed suit against Premier, seeking declaratory and injunctive relief. These actions were consolidated by the trial court, making Roos a defendant in the original action brought by Premier.

number of approaches: (a) the value of the damage suit against TIFCO dismissed with prejudice by Premier in consideration for the Settlement Agreement; (b) the value of Premier's lost sales revenue because of the employment of Roos by TIFCO (an amount contested by the parties); (c) the value of the future effect of TIFCO's breach and the intervention by Roos upon all of Premier's other contracts with its sales agents. Additionally, this Court has held, in Liberty Mutual Ins. Co. v. Horton, 5 Cir. 1960, 275 F.2d 148, that the jurisdictional amount may be established by considering the amount alleged by the counterclaim in aggregate with the main claim. Ed Roos pleaded that the amount in controversy in his counterclaim in intervention exceeded the sum of $10,000. This assertion was not contested by the parties.[4]

■ It should also be noted that the value of the attorney's fees Premier was entitled to recover under the Settlement Agreement (here, $3,500) is properly includable in determining the amount in controversy. See, Batts Restaurant, Inc. v. Commercial Ins. Co. of Newark, 7 Cir. 1969, 406 F.2d 118; Cupples Co. Mfrs. v. Farmers & Merchants St. Bank, 5 Cir. 1968, 390 F.2d 184. Thus although the value of the present and potential loss to Premier may be difficult of ascertainment, we think it is clear that this loss is considerable and of sufficient amount to confer jurisdiction in this case. The awkward phrasing used by the trial judge in framing his jurisdictional finding (supra) will not operate to defeat jurisdiction otherwise clearly present.

The other issues presented by TIFCO and Roos are that: (1) Premier should have had the burden of proving the legality (i. e., the reasonableness) of its covenants not to compete; (2) the covenants were void as against public policy; (3) the covenants violated contract law because of the lack of mutuality, consideration, etc.; and (4) the lower court could not by injunction extend the term of the covenants beyond the two years provided in the contract. In substance, however, appellants' argument is based upon the plight of Ed Roos and the alleged illegality of his anti-competition covenants with Premier.

Roos raises the same issue on appeal as he presented in the court below, namely that he should be excused from the application of the restrictive covenants because of their illegality and/or unenforceability. TIFCO's position essentially is that its hiring of Roos was not in violation of the Settlement Agreement since Roos' contract with Premier was invalid. These contentions are all lacking in merit.

■ There does not appear to be any dispute between the parties as to the state whose law governs these covenants. Roos' contract with Premier controls. See, 17 C.J.S. Contracts § 12(3) (1963), and the cases cited therein. The contract provides that the laws of the State of Ohio shall govern both as to interpretation and performance. It seems clear that the Roos contract is valid and enforceable under Ohio law. The leading case in Ohio is Extine v. Williamson Midwest, Inc., 176 Ohio 403, 200 N.E.2d 297 (1964), in which the Ohio Supreme Court held that "partial" restraints, as opposed to "general", are not void, but are judged as to enforceability under a rule of "reasonableness". The court went on to hold that a covenant not to compete is valid and enforceable where the restraint is partial and reasonably limited both in time and space. The court felt it was within its power to affirm even unreasonable contracts by applying the so-called "blue pencil" doctrine, i. e., by modifying those portions of the covenants which were unreasonable in restraint. The court in *Extine* sustained as reasonable a time restriction of two years, but modified the unlimited area restriction to a specific geographical area. For specific examples

---

4. This pleading would also seem relevant to a determination of the value of Premier's lost sales revenue.

of the application of the *Extine* holding in Ohio, see Evans v. Duracote Corp., 13 Ohio App.2d 63, 233 N.E.2d 873 (1968); Gobel v. Laing, 12 Ohio App.2d 93, 231 N.E.2d 341 (1967); E.P.I. of Cleveland, Inc. v. Basler, 12 Ohio App.2d 16, 230 N.E.2d 552 (1967); Patterson International Corp. v. Herrin, 25 Ohio Misc. 79, 264 N.E.2d 361 (Ct. Common Pleas Ohio 1970). Ohio's position regarding covenants not to compete appears to be the majority view in the United States. See, 17 C.J.S. Contracts § 254 (1963), and the cases cited therein. The trial court's finding that the contract was properly entered into and executed by Roos and Premier is not clearly erroneous. Rule 52(a), F.R.Civ.P. Thus we feel that the Roos contract is valid and enforceable under Ohio law and that Roos therefore is in breach of his contract with Premier. The validity of the Roos contract establishes TIFCO's breach of the Settlement Agreement.[5]

■ Appellants' other contentions are equally unmeritorious. The record on appeal demonstrates that Premier sufficiently established the legality of its covenants at trial. Appellants' argument that the trial judge exceeded his discretion by enjoining the appellants beyond the time specified in the Roos contract is without merit. TIFCO had the benefit of Roos' services in Douglas County for over a year prior to the judgment below.[6] It was within the equitable power of the lower court to enjoin Roos and TIFCO until January 1, 1972 in order to effectuate some relief to Premier.

■ On February 16, 1971, this Court granted the appellants' motion to stay the injunctions below pending appeal, thus allowing TIFCO to utilize Roos' services until this appeal was concluded. Appellee asks that this Court now modify the judgment below to extend the injunctions granted for one year from the date of finality of this Court's judgment. It would be pointless to affirm the court below, only to have that court's relief terminate in January, 1972, a few months hence. We therefore sustain appellee's right to enjoyment of its injunctive relief for a meaningful period of time, and direct the trial court to modify the judgment below so as to extend the injunctions granted to a time one year from the date of that court's judgment enforcing our mandate.

The lower court's judgment, as modified, is affirmed. The Clerk is directed to assess the costs of this appeal against the appellants.

5. Even if the Roos contract were found to be invalid and unenforceable, appellee contends that the issue of enforceability of the Roos contract is legally irrelevant to the enforcement of the Settlement Agreement. We would tend to agree with appellee were it necessary to do so in order to dispose of this case. TIFCO contracted for valuable consideration not to act so as to violate or to cause violation of Premier's anti-competition covenants. Implied in the Settlement Agreement was TIFCO's agreement not to raise the issue of the enforceability of Premier's restrictive covenants as a defense to its own non-performance under the agreement, for otherwise the Settlement Agreement would have been of no effect and TIFCO would have been making an illusory promise. The doctrine of equitable estoppel might well have applied here also. TIFCO accepted the validity of Premier's employment contracts when it entered into the Settlement Agreement. Premier reasonably relied on this agreement in dismissing its damage suit against TIFCO. TIFCO might also be said to have waived any right it may have had to attack the validity of the covenants by entering into the Settlement Agreement.

6. Roos began working for TIFCO in January or March, 1969, and the original action was filed in October of that year. Final judgment was not entered until November of the following year.