**ENSCO INTERNATIONAL, INC., Respondent,**

**v.**

**William BLEGEN, Appellant.**

**No. CX–87–479.**

Court of Appeals of Minnesota.

Aug. 4, 1987.

Gary M. Hird, Law Offices of Gary M. Hird, Lachlan B. Muir, Lachlan B. Muir Law Office, Apple Valley, for respondent.

Douglas G. Peine, St. Paul, J. Patrick Wilcox, Wilcox & Associates, P.A., Edina, for appellant.

Considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is an action to enforce a non-compete agreement. After an evidentiary hearing, the trial court granted the motion of respondent Ensco International, Inc. for a temporary injunction against its former employee, appellant William Blegen. Blegen appeals from this order. We vacate the injunction in its entirety and remand for trial forthwith on the merits.

## FACTS

Ensco is a nationwide computer brokerage firm engaged in the sale and purchase of used computer equipment. The corporation was established in April 1985 by its sole owner and president, E. Neil Spaulding. Prior to joining Ensco, Blegen concentrated his efforts in the insurance industry and was recognized for his marketing expertise and his effectiveness in dealing with sophisticated accounts.

In June 1986, Blegen sought employment with Ensco as a marketing representative. Three interviews were held, and on June 25, 1986, the parties entered into an oral employment agreement. Spaulding wrote a confirming letter to Blegen the same day that outlined the terms of employment but omitted any reference to a non-compete agreement. Spaulding characterized this as an "honest omission."

It is undisputed that Blegen signed the non-compete agreement when he reported for his first day of work with Ensco on June 30, 1986. A dispute arose over Blegen's prior knowledge of the need to sign such an agreement. Blegen contended that the necessity of signing a non-compete agreement was never directly discussed during the interviewing process and that he signed under the distinct impression from Debra DeGreef, Ensco's comptroller, that "either you sign this * * * or you are pretty much done." Spaulding was fairly certain Blegen was informed that a non-compete agreement would have to be signed, a practice completed by all Ensco personnel on their first day of employment.

Blegen terminated his employment with Ensco on January 12, 1987. In the ensuing weeks he contacted two businesses with which he had previous contact as an Ensco employee. The first, a Connecticut hospital, was a potential Ensco customer. The second, a health care center in Spokane, Washington, had transacted business with Ensco in the past.

Blegen testified that he contacted the health care center at its request to follow up on an Ensco purchase order. He explained that he contacted the hospital upon the assumption that it was not interested in the Ensco deal proposed while he was with the company. Blegen admitted that he had obtained the hospital's name from a list owned by Ensco. However, the evidence established that the list was purchased on the open market. Accordingly, the trial court ruled that the list itself was not entitled to trade secret protection.

Blegen raised a number of defenses in response to Ensco's motion for injunctive relief pertaining to the validity of the non-compete agreement and Ensco's failure to treat various information as confidential. He also raised the defense of unclean hands, asserting that Ensco misrepresented the terms of his employment and falsely

accused him of stealing confidential documents from his files. Spaulding admitted the allegation that Blegen had stolen confidential documents was based on erroneous information.

In its motion for injunctive relief, Ensco claimed that Blegen's association with Computer Sales, an Ensco competitor, and his solicitation of business from existing and potential Ensco customers constituted a direct violation of the non-compete agreement, that given the highly competitive nature of the business, such action irreparably harmed Ensco and that the only way to prevent further harm to Ensco was enforcement of the non-compete clause. The trial court agreed and issued a temporary injunction but did not support its order with findings of fact, conclusions of law or citation of authorities.

## ISSUE

Did the trial court clearly abuse its discretion in issuing a temporary injunction precluding Blegen from violating the terms of a non-compete agreement when its decision was not supported by findings of fact and conclusions of law?

## ANALYSIS

■ The trial court's initial failure and subsequent refusal to make findings in support of the temporary injunction is directly contrary to law in this jurisdiction. Minn.R.Civ.P. 52.01 states in relevant part:

In all actions tried upon facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; *and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.*

Minn.R.Civ.P. 52.01 (emphasis supplied).

In *In re Amitad, Inc.*, 397 N.W.2d 594 (Minn.Ct.App.1986), we held that findings of fact are *required* when a trial court grants a temporary injunction or refuses to dissolve the unexplained injunction. In reversing the temporary injunction and re-

manding for further proceedings, we noted in *Amitad* that the supreme court has increasingly demanded findings to explain a trial court's decision when a broad exercise of discretion is involved. *Id.* at 596 (citing *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn.1986)). Findings in sufficient detail to support a trial court's decision are necessary for effective appellate review. *See Amitad*, 397 N.W.2d at 596.

In *Crowley Co., Inc. v. Metropolitan Airports Commission*, 394 N.W.2d 542 (Minn.Ct.App.1986), we noted that limited exceptions exist to the general requirement under rule 52.01 that a trial court make specific findings: (1) when the record is clear and the facts not seriously disputed; and (2) when the decision necessarily decides all the disputed facts or, if not *all* disputed facts, all material facts. *Crowley*, 394 N.W.2d at 545. Neither the first exception, delineated in *Roberson v. Roberson*, 296 Minn. 476, 478, 206 N.W.2d 347, 348 (1973), nor the second exception, set forth in *Lafayette Club v. Roberts*, 196 Minn. 605, 611, 265 N.W. 802, 805 (1936), applied to the trial court's denial of a temporary injunction in *Crowley*, nor do they apply to the grant of the temporary injunction in the present case.

■ While we are concerned by the trial court's failure to make findings in this case, we are more disturbed by its refusal to allow Blegen's request for post-trial relief. The events outlined in a supplemental affidavit by Blegen's attorney illustrate an unfortunate abuse of discretion:

I [Blegen's attorney] explained that the matter involved a six-month injunction that foreclosed Mr. Blegen from continuing his current employment, and therefore that if any post-trial relief were to have meaning, it would require expedition. I also pointed out that in direct violation of Rules 52.01 and 65.03, the Injunction included no findings of fact or conclusions of law * * *.

* * * [The judge] first told me that he had no sympathy for Mr. Blegen's procedural situation. He agreed finally, how-

ever, to hear the matter eleven days later on March 20.

\* \* \* \* \* \*

\* \* \* [The next day] the Judge called me. The Judge told me that *any motion for amended findings or for a new trial would be futile and a waste of time. He said that the fact that the Injunction had no findings of fact or conclusions of law was not a problem,* and that if we didn't like the Injunction we should file an appeal to the Court of Appeals.

(Emphasis supplied.) Absent any explanation by the trial court, this document, when viewed in combination with the trial record, raises serious questions of whether a fair trial could be obtained. The trial court's comments after Blegen objected, on hearsay grounds, to testimony establishing the content of his conversation with the hospital representative compound our concern:

THE COURT: \* \* \* You have got to remember that there are a couple of things. One is that they can call adverse Blegen, and you have got to remember that he's going to be under oath, *and what he says better be the truth because if it isn't then it goes to the County Attorney on perjury.* Do you still want to hold it up, do you want to continue with your motion [i.e., the objection to double hearsay evidence]?

[ATTORNEY FOR COMPUTER SALES]: Yes, Your Honor, I would. I think Mr. Blegen ought to be the source of the—

THE COURT: Okay. Just remember that, that's just to make how long you folks are going to sit here on this particular proposition this morning. *We can do it the hard way or we can do it the easy way,* and you can decide how you want to do it. I mean, let's remember, if this fact is going to come out sooner or later, okay, it's going to come out sooner or later. If you think it isn't going to be that way, then it's fine. But if it isn't, you are just going to do this baby the hard way, always remember that. So, if you want to do everything the hard way, you have one thing to sell, that's time, *and the longer you sit here the less you are going to come out of this. I can sit here all day, but just remember that, and I will sustain the objection, but remember that.*

(Emphasis supplied). To threaten that the outcome of a case will be negatively affected by the presentation of appropriate objections converts intemperance to violations of judicial duty. The Minnesota Supreme Court has held:

Certainly, the impartiality of the judiciary is to be jealously guarded, and the "right to peremptorily challenge a judge shall be liberally construed to safeguard in both fact and appearance the constitutional right to a fair and impartial trial." *Ellis v. Minneapolis Commission on Civil Rights,* 295 N.W.2d 523, 524–25 (Minn.1980).

*McClelland v. Pierce,* 376 N.W.2d 217, 220 (Minn.1985). Because of the peculiar circumstances that have occurred in this case, there is still available to appellant the protection of Minn.R.Civ.P. 63.03 if a proper affidavit is filed.

In view of our decision, it is unnecessary to address other issues raised by Blegen on appeal.

### DECISION

The temporary injunction is vacated in its entirety and the matter is remanded for trial forthwith on the merits.

Reversed, temporary injunction vacated and remanded.