**MINNESOTA BEST MAID COOKIE COMPANY, INC., Respondent,**

v.

**FLOUR POT COOKIE COMPANY, INC., et al., Appellants,**

**and**

**Ike's Products, Inc., et al., Byron Erickson, et al., Respondents.**

**No. C3–87–727.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

Terrence J. Fleming, Luke H. Terhaar, Lindquist & Vennum, Minneapolis, for Minnesota Best Maid Cookie Co., Inc.

Marshall H. Tanick, Sherri L. Knuth, Tanick & Heins, Minneapolis, Timothy S. White, White & Warbasse, P.C., Cedar Rapids, Iowa, for Flour Pot Cookie Co., Inc., et al.

Bradley Janzen, Moriarty, Janzen & Labine, P.A., Minneapolis, for Ike's Products, Inc., et al.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

On December 16, 1986, the trial court issued a temporary injunction which restrained Minnesota Best Maid Cookie Co., Inc. (Best Maid), from distributing gourmet cookie products to five named corporations on the confidential customer list owned by Flour Pot Cookie Company, Inc. (Flour Pot). The injunction was dissolved by order dated March 13, 1987.

This appeal is taken from the March order under Rule 103.03(b) of the Minnesota Rules of Civil Appellate Procedure. Appellant, Flour Pot, contends the temporary injunction should have been extended and that the order dissolving the injunction should be vacated on the basis that the trial judge made no findings of fact or conclusions of law as required by Minn.R.Civ.P. 52. We affirm.

## FACTS

Flour Pot was formed by two Minneapolis homemakers who created a partnership to make and sell the gourmet soft chewy cookies and muffins they had developed. An agreement was reached between Flour Pot and Best Maid in 1982, which permitted Best Maid to manufacture cookies and muffins according to Flour Pot secret recipes and distribute them to Flour Pot confidential customers. Additionally Best Maid, its principals and employees were required to sign covenants to assure the confidentiality of Flour Pot recipes, manufacturing processes, know-how and customer information. In June 1985, Byron Erickson, president of Best Maid, gave written notice to Flour Pot of his intent to terminate the agreement between them.

Flour Pot owed Best Maid $150,731.41 for past due invoices at the time the business relationship was terminated. In November 1985, Best Maid sued in Minnesota state court to obtain the sum owed. Flour Pot then filed suit in federal court in Iowa. The two lawsuits were settled when the parties negotiated an Agreement and Release effective December 2, 1985. Both parties were represented by counsel. Alleged breaches of the Agreement resulted in the present litigation.

The relevant provisions in the December 1985 covenant not to compete were as follows:

For good and valuable consideration, the parties hereto agree as follows:

1. For a period of Fifteen (15) months from the Effective Date, (December 2, 1985), neither Best Maid * * *, shall not directly or indirectly sell, distribute or

otherwise transfer \* \* \* Gourmet muffins and cookies \* \* \* to, or directly or indirectly solicit orders for Cookie Products from, any customer \* \* \* identified on the list attached hereto \* \* \*.

c. \* \* \* However, Best Maid will not be deemed to be in violation of this covenant if any Unrelated Distributor, not listed on Exhibit 1 resells Best Maid Cookie Products to any customer listed on Exhibit 1 if such customer's identity is independently known to or discovered by the Unrelated Distributor and is not learned from or disclosed by Best Maid or any of the Individuals.

d. The term "Unrelated Distributor" means any entity in the business of purchasing and reselling food products which is not affiliated or associated with Best Maid \* \* \* at any time prior to the termination of the August 31, 1982 Agreement.

\*   \*   \*   \*   \*   \*

3. *Confidentiality of Flour Pot Know-how.* Best Maid and the Individuals hereto will keep confidential and not use or disclose to any person (or permit any Best Maid employee, director, officer or shareholder) to use or disclose any recipes furnished by Flour Pot to Best Maid or such persons (or learned by Best Maid or such persons) during the course of performance of the August 31, 1982, agreement. Best Maid and the Individuals represent and warrant as of the Effective Date that none of them have disclosed such materials to any other person. This obligation shall continue throughout the terms hereof and thereafter shall cease only as to such portions of the foregoing information which have entered the public domain through no fault of Best Maid or any of the Individuals.

4. *Best Maid Recipes.* Best Maid and the Individuals hereto each represents and warrants that the recipes which Best Maid uses for its Cookie Products are substantially different from the recipes currently used by Flour Pot for the same types of products. The parties acknowledge that Best Maid may not use different ingredients for all types of Cookie Products listed in Exhibit 2 hereto, but Best Maid and each of such persons represents and warrants that if any of such Cookie Products use all of the same ingredients as the same type of Flour Pot products, then such type of cookie consists of substantially different measures of such ingredients. The representations and warranties set forth herein shall continue to be true throughout the term of this Agreement and thereafter as necessary to comply with the obligations of paragraph 3.

\*   \*   \*   \*   \*   \*

7. *Damages.* The parties acknowledge that it would be difficult to determine Flour Pot's actual damages resulting from any breach by Best Maid \* \* \* of paragraph 1 of this agreement. Accordingly the parties agree that the measure of damages set forth below represents a fair and reasonable method for determining Flour Pot's damages arising from any such breach and stipulate and agree that such measure shall be the exclusive method for determining such damages.

\*   \*   \*   \*   \*   \*

b. The liquidated damages provisions, as set forth in this paragraph, shall be the exclusive remedy for any breach of paragraph 1 of this Agreement.

\*   \*   \*   \*   \*   \*

8. *Injunctive Relief.* Without limiting any other remedy to which Flour Pot may be entitled hereunder or under applicable law, the parties acknowledge that in the event of any breach of the provisions of paragraph 2, 3 or 4 herein, Flour Pot shall be entitled to obtain an injunction prohibiting any further such violation.

9. *Payment and Escrow Account*

\*   \*   \*   \*   \*   \*

c. If, on the due date for any of the foregoing payments, a breach of this Agreement has occurred and has not been resolved by judicial order or otherwise by the parties to their mutual

satisfaction, Flour Pot may instruct the Escrow Agent to hold back One hundred ten percent (110%) of the amount in dispute from the sum otherwise due and payable on such date.

\* \* \* \* \* \*

e. In the event Flour Pot instructs the Escrow Agent to hold back all or any portion of any funds otherwise payable \* \* \* for an alleged breach of paragraph 1 of this Agreement, the alleged breach shall be submitted to arbitration under the rules of the American Arbitration Association \* \* \* and Minnesota Uniform Arbitration Act.

\* \* \* \* \* \*

Pursuant to the agreement, an immediate down payment on the debt was to be made by Flour Pot and the remainder owing was to be deposited in an escrow fund and paid over a fifteen month period. Flour Pot paid the down payment of $37,-682.86, followed by payments amounting to $62,000.00, approximately one-half of the fund in escrow. In May 1986 Flour Pot obtained information which led it to believe that within a few days of signing the agreement, Best Maid had breached the non-compete clause. On May 30, 1986, Flour Pot gave written notification of the purported breach to the escrow agent and instructed that further payment be withheld. Upon receipt of the notice, Best Maid made written demands for release of the funds and objections to the propriety of the escrow agent's action.

In July 1986, Best Maid brought an action in Hennepin County, seeking release of funds from the account. Flour Pot counterclaimed for injunctive relief, but did not bring a motion to seek that relief for approximately six months.

During discovery, Flour Pot obtained approximately 24 invoices showing shipment of cookie products from Best Maid to five of Flour Pot's sixty-eight confidential customers. Most sales were through an intermediary, Ike's Products, Inc., incorporated in February 1986. The mailing address on Ike's Products' brochure and Best Maid's business address were identical. Further-more, Ike Byers, age 81 and principal of Ike's Products, had not marketed soft chewy cookies or muffins for approximately 60 years.

Six months after discovery of the breach, Flour Pot moved for a temporary injunction against Best Maid and Ike's Products. Flour Pot did not request that an injunction be effective for any particular length of time. A continued hearing was held on December 11, 1986. The court concluded Best Maid had "violated the terms of the 1985 Agreement and Release by selling Best Maid cookie products to Gourmet Kitchens and American Fruit and Produce," customers on the Flour Pot list. Additionally, it found "there is evidence together with reasonable inferences that Best Maid indirectly through Ike Byers and Ike's Products sold Best Maid gourmet cookies to Arby's, Upper Lakes and Aslesens," who were three other Flour Pot confidential customers. The court found that these sales put Flour Pot at a competitive disadvantage. It found Flour Pot had demonstrated a reasonable likelihood of success on the merits, had no adequate remedy at law and would suffer irreparable harm if an injunction did not issue.

The trial court restrained Best Maid and Ike's Products, together with their officers, shareholders, and employees, from selling directly or indirectly soft chewy gourmet cookies to the five named companies on the Flour Pot list. The injunction by its terms was to run for 76 days until March 2, 1987, the day the parties' 15 month covenant not to compete expired.

Flour Pot did not object to the terms of the injunction at the December 11 hearing. Neither party appealed after the injunction was issued. In a December 30, 1986, telephone conference between the attorneys and the trial judge, Flour Pot asked for the trial on the merits to be held prior to expiration of the injunction, but the court calendar was fully scheduled. Flour Pot, therefore, asked for an extension of the injunction. The parties were asked to bring motions on the issue.

Flour Pot filed a motion on February 20, 1987, requesting extension of the injunction to give a further 12 months protection from competition. A hearing was held on March 2, 1987, and by order dated March 13, 1987, the trial court denied Flour Pot's motion and dissolved the injunction. In addition, the trial court granted Best Maid's request to submit to arbitration the parties' disputes regarding the amount of liquidated damages for alleged past breaches by Best Maid. Finally, the court enjoined Best Maid, Ike's Products, their officers, employees, agents and representatives from selling directly or indirectly, gourmet cookie products which were not substantially different in appearance, taste, texture, recipe and ingredients from those sold by Flour Pot.

## ISSUES

1. Did the trial court err when it denied a motion to extend a temporary injunction without making findings of fact and conclusions of law?

2. Is the respondent entitled to attorney fees on appeal?

## ANALYSIS

### I.

*a) Lack of Findings*

■ Flour Pot contends the order denying its motion for extension of the temporary injunction should be vacated because it was not supported by findings of fact and conclusions of law as required by the Minnesota Rules of Civil Procedure, which state:

> In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon * * *; and in *granting or refusing* interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action (emphasis added).

Minn.R.Civ.P. 52.01. When an action is tried to the court, it is common practice for litigants to offer proposed orders, findings and conclusions to aid the trial court.

Although both parties submitted proposed orders to the trial court, neither party submitted findings. Best Maid responds to Flour Pot's complaints regarding a lack of findings by asserting, correctly, that the trial court adopted Flour Pot's proposed order and, therefore, Flour Pot should not be permitted to complain on appeal about the order's deficiencies. We cannot, however, unequivocally accept Best Maid's argument. Although it may be both advisable and beneficial for a party to include findings in its proposed order, ultimately the duty to make findings rests upon the trial court and not upon the parties. Minn. R.Civ.P. 52.01.

Nonetheless, in *Crowley Company, Inc. v. Metropolitan Airports Commission,* 394 N.W.2d 542, 545 (Minn.Ct.App.1986) (citing *Roberson v. Roberson,* 296 Minn. 476, 478, 206 N.W.2d 347, 348 (1973)), although reversing the trial court's denial of injunctive relief because the denial was not supported by the record, we observed:

> where the record is reasonably clear and the facts not seriously disputed, the judgment of the trial court can be upheld in the absence of trial court findings pursuant to Rule 52.01 * * *. However, where the record is not clear and the facts are in dispute, findings of fact by the trial court made pursuant to Rule 52.01 should be made.

*Id.*

We shall review the record, especially the injunction of December 11, 1986, in an effort to determine the propriety of the March 13, 1987 order. Minn.R.Civ.App.P. 103.04 provides:

> On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken * * *.

*Id.*

The order presently before us on appeal can be evaluated satisfactorily only when read together with the December 11 order granting injunctive relief. In turn, review of these orders has no meaning unless conducted within the context of the parties'

agreement. The sole question upon review is whether there was a clear abuse of discretion by disregard of facts or applicable equity principles. *M.G.M. Liquor Warehouse International v. Forsland,* 371 N.W.2d 75, 77 (Minn.Ct.App.1985).

The terms of the December 1986 injunction in effect enforced the terms of the December 1985 agreement and release. Best Maid and Ike's Products were enjoined from further breach of the non-compete covenant during its remaining life. On March 2, 1987, the December 1986 injunction automatically lapsed pursuant to its own terms. Under the terms of the agreement, March 2 was the date upon which the covenant not to compete was to expire. The March 13, 1987 order also, in effect, served to enforce the parties' agreement. First, through its March 13 order, the court required the parties to arbitrate the alleged violations of paragraph 1 of the agreement. Paragraph 9 of the agreement provides for such arbitration. Flour Pot made no objection to this requirement of the March 13 order and did not raise the issue on appeal.

Second, under the terms of the March 13, 1987 order, Best Maid and Ike's Products were enjoined from selling cookie products which were not substantially different from those sold by Flour Pot. This provision reflects the intent of paragraphs 3 and 4 of the parties' agreement. Flour Pot made no objection to the protection it received from this provision of the March 13, 1987 order.

Further, upon examination of the December 11, 1986 and the March 13, 1987 orders, in the context of the underlying agreement, we conclude that the lack of findings does not hamper our review.[1] The record adequately supports the trial court's decision to deny an extension of the temporary injunction.

b) *Extension of the Temporary Injunction Beyond the Term of the Non-compete Agreement*

█ In addition to its complaints regarding insufficient findings, Flour Pot contends the ruling in *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81 (Minn.1979), supports its position for an extension of the injunction. We cannot agree. In *Cherne,* the trial court issued a permanent injunction in response to a complaint of a breach of a duty not to use confidential information. Here, a temporary injunction was granted to enforce the covenant not to compete during its lifetime.

Cherne Industrial also sought injunctive relief for breach of a covenant not to compete, which had expired before the motion was brought.

The supreme court in *Cherne* stated:

Generally injunctive relief based on a contract must be co-extensive with the terms of the contract. Thus if the restrictive period of a covenant not to compete has expired, an injunction will not be granted to enforce the covenant. Nevertheless, there may be situations where injunctive relief extending beyond the expiration of the period established by the covenant is appropriate.

*Cherne,* 278 N.W.2d at 93 (citations omitted).

Flour Pot contends that its situation falls into the special category described in *Cherne* and, therefore, extension of the injunction beyond the term of the non-compete agreement is warranted. Again, we do not agree. The *Cherne* court emphasized that the injunction was issued only as a remedy for breach of a promise not to

---

1. Appellant cites this court's recent decision in *Ensco International, Inc. v. Blegen,* 410 N.W.2d 11 (Minn.Ct.App.1987) in support of its contention that the March 13, 1987 order was fatally flawed due to its lack of findings. We find *Ensco* inapplicable to the facts of this case. In *Ensco* a temporary injunction was issued without supporting findings. In the present case the temporary injunction issued on December 11, 1986, was supported by findings and was not appealed. An independent review of the provisions of the December 11 order convinces us that it met the requirements for specificity set forth in *Dahlberg Brothers, Inc. v. Ford Motor Company,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). It is this December 11 order, not the order of March 13, which is the counterpart of the order complained of in *Ensco.*

use confidential information. The supreme court did not reach the issue of whether an injunction could be issued for breach of a covenant not to compete. *Id.*

Furthermore, we find the facts here preclude qualification for the special consideration envisioned in *Cherne.* The two year covenant in *Cherne* contained neither a liquidated damages provision nor an arbitration clause. In addition, the remedy of arbitration of damages was available to Flour Pot. It is probable, on this basis, that had Flour Pot moved for injunctive relief after the expiration of the non-compete agreement, it would have been denied because there was an adequate remedy at law.

Flour Pot cites *Premier Industrial Corporation v. Texas Industrial Fastner Company*, 450 F.2d 444 (5th Cir.1971) as additional support for its requested extension of the injunction. In *Premier*, the fifth circuit modified the judgment so as to extend the expiration date of an injunction stayed pending appeal. Without this adjustment, Premier would have benefited from only one year of competition-free business instead of the two year protection granted by the injunction. The facts of *Premier* are distinguishable from this case.

Here, Best Maid had substantially complied with the terms of the non-compete agreement. Any extension of the injunction beyond March 2 would have resulted in greater protection for Flour Pot than the parties bargained for and would place an unfair burden on Best Maid.

## II.

Respondent, Best Maid, requests attorney fees for this appeal in its brief, but makes no argument and cites no authority to support the claim. "Attorneys' fees are not recoverable absent authorization by statute or by contract." *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn.1983). The 1985 agreement and release makes no provision for attorney fees awards in this instance, and we discern no basis upon which an award of attorney fees would be appropriate here.

## DECISION

The trial court's denial of a motion to extend the term of a temporary injunction was adequately supported by the record. The respondent's request for attorney fees upon appeal is denied.

Affirmed.