DOOLEY, APPELLANT, *v.* BARBERTON CITIZENS HOSPITAL, APPELLEE.

[Cite as Dooley *v.* Barberton Citizens Hospital (1984), 11 Ohio St. 3d 216.]

(No. 83-40—Decided June 27, 1984.)

Messrs. *Johnson & Helmuth, Mr. R. J. Helmuth* and *Ms. Taryn L. Stambaugh,* for appellant.

Messrs. *Roetzel & Andress, Mr. K. R. Aughenbaugh* and *Mr. Jeffrey J. Casto,* for appellee.

Messrs. *Bergson, Borkland, Margolis & Adler, Mr. Howard Adler, Mr. Edward J. Westbrook, Messrs. Sinrod & Tash* and *Mr. Werner Strupp,* urging reversal for *amicus curiae,* American Podiatry Association.

Messrs. *Vorys, Sater, Seymour & Pease, Mr. James P. Friedt* and *Ms. Anne C. Griffin,* urging reversal for *amicus curiae,* Ohio Podiatry Association.

Messrs. *Bricker & Eckler* and *Mr. Richard C. Pfeiffer, Jr.,* urging affirmance for *amicus curiae,* Ohio Hospital Association.

LOCHER, J. The issue before us is whether Barberton Citizens Hospital, through its by-laws, illegally discriminated against appellant, a licensed Doctor of Podiatric Medicine because of his practice as a podiatrist. For the reasons set forth below we find such discrimination had occurred. Accordingly we reverse the court of appeals and remand as hereinafter set forth.

This cause has witnessed a number of transformations in the hospital's by-laws. Because of the importance of the issues to be resolved it is necessary to examine the factual basis of this case with close attention to the hospital by-laws prior to May 23, 1983.

We cannot, however, resolve the questions, if any, raised by changes in the rules, constitution and by-laws of the hospital subsequent to the court of appeals' decision. Such questions necessarily involve findings of fact and conclusions of law that were not adequately raised in the instant appeal and were not fully and fairly argued before us. We are therefore compelled to leave such findings of fact and conclusions of law to the proper trial court forum should appellant decide to renew his suit with respect to the new rules.

I

At the time this suit commenced Barberton Citizens Hospital subjected podiatrists to the following limitations:

"RULES AND REGULATIONS
OF THE MEDICAL AND DENTAL STAFF
OF THE BARBERTON CITIZENS HOSPITAL

"* * *

"IV.  Division of Surgery

"* * *

"Rules and Regulations of the Surgical Division:

"* * *

"8.  Podiatry:

"1.  Podiatrists granted privileges will be assigned to the Department of Orthopedics.

"2.  Privileges may be extended to Board Certified or Board Eligible podiatrists who are licensed in the State of Ohio and who have com-

pleted at least two (2) years of post-graduate training in an approved residency program.

"3. Podiatrists granted privileges shall provide conservative care of the foot excluding surgical procedures with anesthesia.

"4. A podiatrist granted privileges may initiate with the concurrence of a physician member of the Medical Staff the procedure for admitting or discharging a patient. Admission of a podiatry patient shall be the dual responsibility of the podiatrist and the co-admitting physician of the Medical Staff. The co-admitting physician member of the Medical Staff shall be responsible for the care of any medical problem that may be present at the time of admission or that may arise during hospitalization. All podiatry patients shall receive the same basic medical appraisal as patients admitted for other service."

"CONSTITUTION AND BY-LAWS OF THE MEDICAL AND DENTAL STAFF OF THE BARBERTON CITIZENS HOSPITAL

"* * *

"Article V. Classification of the Medical Staff

"* * *

"Section 6. Limited Courtesy Staff

"A. The Limited Courtesy Staff shall consist of members of the podiatry profession eligible as herein provided for Staff membership who wish to attend private patients in the Hospital.

"B. Limited Courtesy Staff shall not be eligible to vote, to hold office and shall not advance to other staff membership classifications.

"C. Members of the Limited Courtesy Staff will not be required to rotate on the Emergency Department roster if such a roster is put in effect.

"D. Members of the Limited Courtesy Staff shall be invited and urged to attend the regular Staff meetings."

On May 23, 1983 the trustees voted and approved substantial changes in the rules and regulations, the effect of which is not before us today.

It should be noted that Dr. Dooley is a fully licensed Doctor of Podiatric Medicine by the State Medical Board of Ohio. He has practiced podiatry in Barberton, Ohio for more than twelve years. Dr. Dooley is board eligible with the American Board of Podiatric Surgery, has graduated from the four-year program at the Ohio College of Podiatric Medicine, and has had one year of residency training. Moreover, Dr. Dooley has been afforded full surgical privileges at Wayne General Hospital in Orrville, Ohio. Wayne General, however, is twenty to twenty-five miles from his office which creates difficulty in the treatment of patients. No evidence was presented to suggest Dr. Dooley is anything but an extremely competent and skilled podiatrist.

## II

In 1978 Ohio enacted R.C. 3701.342 (137 Ohio Laws, Part II, 2639), renumbered R.C. 3701.351, which now states:

"(A) [Within one hundred eighty days of the effective date of this sec-

tion,] [t]he governing body of every hospital shall set standards and procedures to be applied by the hospital and its medical staff in considering and acting upon applications for staff membership or professional privileges. These standards and procedures shall be available for public inspection.

"(B) The governing body of any hospital, in considering and acting upon applications for staff membership or professional privileges within the scope of the applicants' respective licensures, shall not discriminate against a qualified person solely on the basis of whether such person is certified to practice medicine or osteopathic medicine, or podiatry, or dentistry.

"(C) Any person may apply to the court of common pleas for temporary or permanent injunctions restraining a violation of division (A) or (B) of this section. This action is an additional remedy not dependent on the adequacy of the remedy at law." (Bracketed material in original R.C. 3701.342.)[1]

Prior to 1978, the rulings of the courts of this state left little doubt that hospitals were to be given substantial discretion in the promulgation of rules relating to staff privileges. See, *e.g.*, *Davidson* v. *Youngstown Hosp. Assn.* (1969), 19 Ohio App. 2d 246, 251 [48 O.O.2d 371]. The extent of discretion was contingent, of course, upon compliance with basic procedural due process constraints. *Khan* v. *Suburban Community Hospital* (1976), 45 Ohio St. 2d 39 [74 O.O.2d 56].

In the case before us we must consider legislation subsequent to earlier Ohio rulings governing hospital discretion with respect to staff privileges. Because R.C. 3701.351(B) is designed to remedially prevent discrimination against podiatry, we are compelled to construe the statute in a manner to reach the presumably intended just and reasonable result (R.C. 1.47) and to effectuate the legislative intent. Thus, while R.C. 3701.351 specifically recognizes the continued need for hospitals to exercise discretion in the selection of staff, we can no longer rely on such discretion where *class-wide* discrimination is extant as delineated in R.C. 3701.351(B). The test we must use is whether the rules and/or regulations of a hospital either overtly or implicitly discriminate against a specified classification (in this case the profession of podiatry). It is also important to note the exact words of R.C. 3701.351 which stipulate that "[t]he governing body of any hospital, in considering and acting upon applications for staff membership or professional privileges within the scope of the applicants' respective licensures, shall not discriminate against a *qualified* person * * *." (Emphasis added.)

---

[1] At present, at least fourteen other states have some form of anti-discrimination provision. Ariz. Rev. Stat. Ann. Section 36-435 (1975-1983 Supp.); Cal. Health & Safety Code Section 1316 (1979); Fla. Stat. Ann. Section 395.011 (1974-1983 Supp.); Ill. Adm. Reg. 1-4.3 (1982); La. Rev. Stat. Ann. Section 37:1301(B) (1984 Supp.); Md. Health-General Code Ann. Section 19-351(b) (1982); Mass. Ann. Laws Ann. Chapter 111, Section 51C (1984 Cum. Supp.); Nev. Rev. Stat. Section 450.430 (1979); N.Y. Pub. Health Law Section 2801-b (McKinney 1977); N.C. Gen Stat. Section 131 E-85 (1983); Okla. Stat. Ann. Tit. 63, Section 1-707a (1983 Supp.); Ore. Rev. Stat. Section 441.063 (1979-1980); S.C. Code Ann. Section 44-7-770 (1977); Va. Code Section 32.1-134.2 (1979).

Courts, in general, have neither the ability nor the particular desire to ascertain who is a qualified person under R.C. 3701.351(B). Moreover, given the language of R.C. 3701.351(A) which vests the hospitals with substantial discretion, it is *still* the hospital's duty and responsibility to set reasonable standards for their staffs. The health and safety of the public and the potential legal accountability of the hospital require that no other construction of the statutory language be taken. Discretion should not, however, be equated with unbridled license. It is important that a visible framework of objective criteria, rules, by-laws and regulations be made available so that the courts, the medical profession, and the general public may be assured that discretionary judgments are not being made purely on a subjective, or even capricious, basis. See, *e.g., Consumers' Counsel* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 49. It is in this spirit that we now turn and review the hospital by-laws before us.

### III

The original rules and regulations applicable to podiatrists mandated a minimum two-year residency program, denied all but conservative foot care privileges, and excluded surgical procedures with anesthesia. Under Section 6, Article V of the Constitution and By-laws of the hospital, podiatrists were relegated to the status of "Limited Courtesy Staff" — ineligible to vote, hold office or advance within the hospital staff hierarchy.

The two-year residency requirement seems, on its face, to be a reasonable manner for assuring minimal levels of competency. Upon closer examination, however, this requirement does not meet the reasonableness test. Under the rules, this two-year requirement was mandated *in addition to* board certification or eligibility. Moreover *no* surgical privileges were allowed even if a podiatrist could be found to meet the criteria. When this two-year rule is examined within the context of other hospital specialty classifications, such as dentists or oral surgeons who are allowed minor surgical privileges after only one year of post-graduate training (or two months of internship required for minor privileges in obstetrics or eighteen months of residency required for major privileges in obstetrics), it is evident that the two-year residency requirement requires close scrutiny. Since less than eight to ten percent of the national podiatric graduates had participated in a two-year residency at the time the rules were promulgated and in view of the fact no two-year residencies were available in the state of Ohio, the hospital's rules were patently discriminatory against podiatrists as a class. Prior to the enactment of R.C. 3701.342, renumbered R.C. 3701.351, such discrimination might have been allowed under the stretched rubric of hospital discretion. With the enactment of this statute, and in the absence of any credible justification for the two-year requirement under the instant factual circumstances, we are left to conclude the two-year residency requirement, *in conjunction with* the requirement of board eligibility or certification, is illegally discriminatory because it is not reasonably related to a determination of whether or not the podiatrist is qualified.

The rule denying all but conservative foot care privileges and excluding surgical procedures with anesthesia is *prima facie* discriminatory. It is paradoxical that a podiatrist able to overcome the two-year residency rule would be excluded from utilizing the type of surgical expertise that would, *ab initio*, justify the attempt at obtaining hospital staff privileges. Moreover no provision is made for qualified podiatrists to ever go beyond conservative or soft tissue foot care. Thus no matter how good the podiatrist might be or become and no matter how great the podiatrist's surgical technique, knowledge or ability, the podiatrist would still be relegated to performing *de minimus* procedures that could, testimony showed, be performed just as well at an office outside the hospital. It is unreasonable to create rules so inflexible as to negate the opportunities of a podiatrist to *fully* practice his or her profession. Such rules have no relationship to competence where no mechanism exists to assess growth in skill and as such is *prima facie* discriminatory against podiatrists as a class. Once again no credible attempt was made to justify these rules under a general rule of reason.

The third concern advanced by Dr. Dooley is with respect to the creation of Section 6, Article V of the hospital Constitution and By-laws which creates the category of "Limited Courtesy Staff." The sole purpose of this classification is apparently to eliminate the role of any podiatrist (*i.e.*, any podiatrist who is sufficiently skilled to surmount the staff entry requirements, but who would then have no opportunity to utilize the full extent of those skills at the hospital) in formal hospital decision making. A competent and qualified podiatrist could not vote, hold office, or rise in the hospital hierarchy. Such provisions are, once again, *prima facie* discriminatory and have no rational purpose other than discrimination against a particular classification of practitioner. No reason was offered to justify these rules nor was any evidence adduced to show a reasonable relationship to a podiatrist's professional competence.

We are mindful that the above-mentioned rules were eliminated or modified in May 1983. R.C. 3701.351(C) states:

"Any person may apply to the court of common pleas for temporary or permanent injunctions restraining a violation of division (A) or (B) of this section. This action is an *additional remedy, not dependent on the adequacy of the remedy at law.*" (Emphasis added.)

Accordingly, since plaintiff-appellant requested damages as an additional remedy at law, the defendant-appellee hospital is still liable for damages incurred during the period of time prior to enactment of the new rules and by-laws. Analysis of the prior rules and by-laws is thus neither moot nor advisory in the present context. See *E.P.I. of Cleveland, Inc.* v. *Basler* (1967), 12 Ohio App. 2d 16, 19 [41 O.O.2d 60]. See, also, *Memphis Light, Gas & Water Division* v. *Craft* (1978), 436 U.S. 1, 8; *Rupe* v. *Fourman* (S.D. Ohio 1981), 532 F. Supp. 344, 348.

We recognize the practical difficulties faced by hospitals in establishing and adopting standards for staff privileges that protect both themselves and the public. To this end we reiterate that courts will not lightly question a

hospital's discretionary judgment unless that judgment is not supported by evidence sufficient to overcome the dictates of R.C. 3701.351.

Today we have set the scope of that evidentiary showing by holding as follows: R.C. 3701.351 prohibits a hospital from adopting standards for staff membership or clinical privileges that are not reasonably related to accepted measures of skill, education and competence.

In making this holding we make no sudden departure from prior Ohio case law but rather embrace the "rule of reason" in conjunction with a heightened scrutiny of rules which affect staff membership or clinical privileges for those professional practitioners delineated in R.C. 3701.351.

With respect to the case *sub judice* we order that the judgment of the court of appeals be reversed and the cause remanded to the trial court for the determination of damages for that time period in which the plaintiff-appellant sought staff privileges but was unable to surmount the illegally discriminatory entry and practice requirements delineated above.

*Judgment reversed and
cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES and C. BROWN, JJ., concur.

HOFFMAN, J., dissents.

HOFFMAN, J., of the Fifth Appellate District, sitting for J.P. CELEBREZZE, J.