MUNOZ, APPELLANT, *v.* FLOWER HOSPITAL, APPELLEE.

(No. L-84-243—Decided December 20, 1985.)

*Jeffrey I. Goldstein* and *Lorin J. Zaner,* for appellant.

*Michael M. Briley* and *William F. Bates,* for appellee.

RESNICK, J. This case comes before this court pursuant to an appeal by plaintiff-appellant from a judgment in the Lucas County Court of Common Pleas dated July 18, 1984, wherein that court granted defendant-appellee's motion for summary judgment and denied plaintiff-appellant's motion for summary judgment. From that judgment the appellant sets forth the following assignments of error:

"I.   The court erred in holding that Flower Hospital's credentials committee did not violate the bylaws even though appellant's application was not completed within three (3) months.

"II.   The court erred in holding that the credentials committee's deviation from the bylaws was diminimis [*sic*] and consented to by the parties.

"III.   The court erred in holding that the board of trustees is not bound by the staff bylaws.

"IV.   The court erred in holding that plaintiff-appellant could not recover monetary damages from defendant-appellee.

"V.   The court erred in denying plaintiff-appellant's motion for summary judgment."

It will be noted at the outset that any one of the holdings of the trial court to which appellant objects in his assignments of error one through four would be sufficient upon which to base the granting of summary judgment in favor of appellee.

The undisputed facts are as follows. Appellee, Flower Hospital, adopted a document known as "Bylaws of the Flower Hospital-Crestview Medical, Dental and Podiatry staffs" (hereinafter "staff bylaws") on July 22, 1981.[1] Ap-

[1] The section of the adopted staff bylaws pertaining to staff appointment procedure states as follows:

pellant, Jose Munoz, M.D., is an anesthesiologist who, prior to his request for reappointment in June 1982, had not performed any procedures at Flower Hospital since approximately 1976. On June 15, 1982, appellant applied for reappointment to the staff pursuant to the staff bylaws. The Chief of the Department of Anesthesiology, Dr. Santa Rita, advised the credentials committee of a need to obtain additional information on appellant regarding his required retraining following three extremely serious malpractice suits involving deaths of appellant's patients. Dr. Rita informed the committee that he would like to see documentation of appellant's retraining before approving Dr. Munoz' reappointment to the medical staff. On September 16, 1982,

the credentials committee met and resolved that they would send appellant a letter requesting the necessary documentation of his retraining. Sometime in November 1982, appellant provided the committee with the requested information on his retraining. On December 16, 1982, the credentials committee met again and recommended that the president of the hospital write to the administrators of hospitals where appellant currently had privileges to request information regarding appellant's current status and performance at those hospitals. On February 17, 1983, the credentials committee met again and resolved that it would send appellant a letter advising him that his reappointment was pending and asking him to sign a release of information form. Appellant

---

"3.2 *Appointment Procedure*

"3.2.1 All appointments to the Medical Staff, all granting of privileges and additional privileges shall be made by the governing body of Flower Hospital and the governing body of Crestview of Ohio, Inc., Executive Committee. All appointments shall be made for two years, with one-half of the Staff being appointed annually, or until the time of the next annual review and then shall be subject to bi-annual review in the same manner.

"3.2.2 The following procedure shall be followed in order in processing all applications for Medical Staff membership:

"3.2.2.1 Any doctor of medicine, osteopathy, dentistry and/or podiatry desiring membership must request an application from the president of the hospital.

"3.2.2.2 The application shall be fully completed and returned to the hospital and will be referred to the Credentials and Professional Relations Committee for investigation of credentials and recommendations. Action on application shall be completed within three (3) months.

"3.2.2.3 The application and recommendation of the Credentials and Professional Relations Committee shall be referred to the Executive Committee for review and recommendation.

"3.2.2.4 The application and recommendation of the Executive Committee shall be referred to the governing body for approval or disapproval.

"3.2.2.5 The new appointee to the Medical Staff shall be notified in writing of the action of the governing body by the president, who shall also inform the appointee of the specific privileges and classification granted. The applicant who has been unsuccessful in obtaining an appointment shall be so notified by the president.

"3.2.2.6 Names of all new appointees to the Medical Staff shall be announced at the next general meeting of the Medical Staff.

"3.2.2.7 All applicants are conditionally appointed subject to the successful completion of a one (1) year Provisional status. The Credentials and Professional Relations Committee shall review applicants after this one (1) year period and if the applicant is approved he/she shall be a member in full status of the category to which he/she is appointed. Refer to bylaws 4.1.5, page 14.

"3.2.2.8 Periodic review of each Medical Staff member shall be done on a regular basis by the Credentials and Professional Relations Committee, with consultation of directors of the divisions and will include consideration of the members' physical and mental capabilities."

signed the release of information form sent by appellee on February 28, 1983. It is not clear from the record when or whether the credentials committee made a recommendation to the executive committee. But, on May 2, 1983, the executive committee recommended to the board of trustees that appellant should not be reappointed to the staff. Appellant requested a "fair hearing review" of the executive committee's adverse recommendation. On July 20, 1983, a fair hearing was held with appellant present; he was given an opportunity to state his position, which he did. Appellant made no objection to any prior procedure at that time. The fair hearing committee rendered its decision the same day upholding the recommendation of the executive committee to deny appellant's reappointment. All these findings and recommendations were sent to the board of trustees of appellee hospital and it voted on October 14, 1983 not to reappoint appellant. Appellant then requested an appeal of that decision. On January 26, 1984, appellant attended, with legal counsel, a final administrative appellate hearing before the full board of trustees at which time the decision of the board not to reappoint appellant was affirmed. Finally, on February 18, 1984, appellant was advised by a certified mail letter that the board of trustees of appellee hospital had decided to follow the recommendation of its staff committees to deny his application.

It is necessary at this point to delineate exactly the type of cause of action appellant is pursuing in the instant lawsuit. It might be easiest by first describing what type of cause of action that this case is not. Appellant is not alleging that he was not afforded due process in his denial of reappointment. He is also not alleging that the denial of his reappointment was wrongful. What he is alleging is that he has suffered damages from appellee's breach of con-

tract which contract is expressed in the staff bylaws. That this is his sole theory of relief is evidenced by his complaint. The pertinent portion of his complaint reads as follows:

"8. Defendant's failure to comply with its bylaws constitute [sic] a failure to reject [sic] plaintiff's application.

"9. Defendant has refused to allow plaintiff to practice his occupation, anesthesiology, at the hospital even though he is considered to be on the active staff as a result of defendant's failure to act within the time limits proscribed [sic] by its bylaws.

"10. As a direct and proximate result of defendant's actions, plaintiff has lost substantial sums of money that he could have been making at the hospital and will continue to lose monies until he is permitted to practice at the hospital. Defendant has lost and will continue to lose $4,000 a week since September, 1982."

The only possible construction of these allegations is that appellant claims that appellee breached its contract (staff bylaws) with appellant and appellant suffered damages as a result of this breach. Therefore, the issue before this court is whether the trial court properly rendered summary judgment in favor of appellee in this contract cause of action.

Civ. R. 56(C), which governs summary judgments, states in pertinent part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such

evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

The trial court must determine three things before summary judgment can be granted. First, that there is no genuine issue as to any material fact; second, that the moving party is entitled to judgment as a matter of law; third, that reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47.

More recently in *Norris* v. *Ohio Standard Oil Co.* (1982), 70 Ohio St. 2d 1, 2-3, 24 O.O. 3d 1, 2, 433 N.E. 2d 615, 616, the court reiterated the function of summary judgment:

" 'Summary judgment is a procedural device to terminate litigation and avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * * A successful motion for summary judgment rests on the two-part foundation that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' * * *" (Citations omitted.)

Additionally, a reviewing court should examine the record on appeal in a light most favorable to the party oppos-

ing the motion for summary judgment. See *Engel* v. *Corrigan* (1983), 12 Ohio App. 3d 34, 12 OBR 121, 465 N.E. 2d 932; *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924. Simply put, a reviewing court should resolve all doubts in the evidence in favor of the non-movant. However, the facts of this case as set out previously are undisputed and it is only their application to the law which is in controversy. Therefore, the first and third prong of the *Harless* test and the first prong of the *Norris* test have already been met and the only question that remains is whether appellee was entitled to judgment as a matter of law on the facts presented.

The assignments of error will not be dealt with in the order in which they appear in appellant's brief, but they will be handled in an order which is more conducive to clarity.

For his third assignment of error, appellant contends that the trial court erred in holding that appellee's board of trustees was not bound by the staff bylaws.[2] The issue presented by this assignment of error is whether there existed a binding contract between appellant and appellee hospital. Appellant contends that appellee was bound by the staff bylaws. It should be noted that there is a difference between the hospital's bylaws and the hospital staff's bylaws. In the case *sub judice*, it is the hospital staff's bylaws which appellant says contractually bind appellee.

There has been only one Ohio case which has addressed the issue of whether a hospital is bound by the bylaws it has adopted. See *Gotsis* v. *Lorain Community Hospital* (1974), 46 Ohio App. 2d 8, 75 O.O. 2d 18, 345 N.E. 2d 641. Unfortunately, that case did not delineate whether it was the hospital's bylaws or the hospital's staff bylaws

---

[2] Since a hospital acts through and is represented by its board of trustees, the terms "hospital" and "board of trustees" will be used synonymously.

which bound the hospital. That court found a violation of both the hospital's bylaws and the hospital's staff bylaws and failed to designate whether the staff bylaws alone bound the hospital or whether it was the hospital's bylaws which bound the hospital, contractually. Therefore, that case does not control the issue in the present case.

A review of cases from other jurisdictions shows there is a split of authority over whether a hospital's staff bylaws contractually bind the hospital to follow those bylaws. Some cases say that staff bylaws do contractually bind the hospital. See *Berberian* v. *Lancaster Osteopathic Hospital Assn., Inc.* (1959), 395 Pa. 257, 149 A. 2d 456; *Terre Haute Regional Hospital, Inc.* v. *El-Issa* (Ind. App. 1984), 470 N.E. 2d 1371; *Clemons* v. *Fairview Medical Center, Inc.* (Ala. 1984), 449 So. 2d 788. Some cases hold that staff bylaws do not contractually bind the hospital. *Manczur* v. *Southside Hospital* (1959), 16 Misc. 2d 989, 183 N.Y. Supp. 2d 960; *Leider* v. *Beth Israel Hospital Assn.* (1960), 33 Misc. 2d 3, 229 N.Y. Supp. 2d 134, affirmed (1962), 11 N.Y. 2d 205, 227 N.Y. Supp. 2d 900, 182 N.E. 2d 393; *Natale* v. *Sisters of Mercy* (1952), 243 Iowa 582, 52 N.W. 2d 701. The cases holding that a hospital is bound by its staff bylaws base their decisions on the reasoning that if the hospital is not bound by the bylaws, then essentially the bylaws would be meaningless. The cases holding that a hospital is not bound by its staff bylaws base their decisions on the reasoning that there is no consideration or mutuality of obligation between the parties and therefore the staff bylaws are not a binding contract. The most enlightened reasoning seems to be that staff bylaws can form a binding contract between the doctors and hospital but only where there can be found in the bylaws an intent by both parties to be bound. See *El-Issa, supra.*

The staff bylaws involved in the case *sub judice* state in their preamble that the bylaws are "subject to the ultimate authority of the applicable governing bodies." The preamble further defines one of the governing bodies as appellee hospital's board of trustees. The obvious interpretation of the bylaws' preamble is that the trustees are, and therefore the hospital is, not to be bound by the staff bylaws and that there is no contractual relationship arising from these staff bylaws because there is no mutuality of obligation between the parties.

Therefore, the trial court could have reasonably found as a matter of law that the staff bylaws did not constitute a contract between the doctors and the hospital, and, therefore, appellee could not be found guilty of a breach of a non-existent contract. For the foregoing reasons, we find that appellant's third assignment of error is not well-taken.

Assuming *arguendo* that the staff bylaws did constitute a contract between appellee and appellant, what were the terms of that contract? The terms of the contract which appellant claims appellee breached were contained in Section 3.2.2.2 of the staff bylaws. That section states:

"The application [for appointment] shall be fully completed and returned to the hospital and will be referred to the Credentials and Professional Relations Committee for investigation of credentials and recommendations. Action on application shall be completed within three (3) months."

Appellant claims that appellee breached the contract by not making a recommendation for his re-appointment within three months of submitting his application. Appellant's first assignment of error argues that the trial court erred in holding that appellee did not violate its staff bylaws even though appellant's application was not completed within three months.

As the facts stated above show, appellant made application on June 15,

1982, and appellee's only action within the following three months was that of the chief of anesthesiology's requesting more information on appellant's retraining. Appellant argues that this was not sufficient compliance with the staff bylaws and, as such, was a breach of the staff bylaws. The sentence in Section 3.2.2.2 stating that "Action on application shall be completed within three (3) months" is by no means clear as to what must take place within those three months to be in compliance with that section. "Action" as used in that sentence may mean any action such as requesting more information, or it could mean that the committee is to give its recommendation, or it also could mean that the committee is to complete its investigation within the prescribed time limit. It has been held that if a particular staff bylaws provision is not exactly clear, each party must be held to the construction which his own conduct has placed upon that provision. See *El-Issa, supra.* The parties' own conduct in the case *sub judice* indicates that neither side required that a recommendation for reappointment or non-appointment be made within three months of the submission of appellant's application. This can be seen in both sides' treating the application as pending until May 2, 1983, when the executive committee made its determination. Most importantly, appellant did not require that the credentials committee make a recommendation within three months after submission of his application but, instead, continued to supply information on his retraining and also signed a release of information well over five months after the three-month period had elapsed.

The construction put on the staff bylaws by the parties via their conduct shows that a recommendation for appointment or non-appointment within the three-month period was not a necessary term of the contract, as contemplated by the parties. Therefore, we find that the trial court could have ruled as a matter of law that the three-month recommendation period was not a decisive term of the contract and, therefore, failure to comply with it did not amount to a breach of contract. Accordingly, we find appellant's first assignment of error not well-taken.

Assuming *arguendo* that there was a binding contract between appellant and appellee and that the three-month time limit within which the credentials committee was supposed to act was a term of that contract, there still remains an issue of whether appellant waived that term by not objecting to the violation of it and demanding adherence to it. The first time appellant objected to the credentials committee's not making a recommendation within three months of his application was over a year and four months after the original three-month time period had lapsed. Waiver occurs when an individual voluntarily relinquishes a known right. If the contract did contain a term that the credentials committee was supposed to make a recommendation for appellant's appointment or non-appointment within the three-month period, then appellant waived that term by his subsequent actions. As was stated before, appellant continued to supply information to the credentials committee and even went so far as to sign a release of information well over five months after the three-month time period had elapsed. He presumably did so because he thought it was in his best interest not to demand a recommendation within the three-month time period. It would be entirely unfair to appellee to hold it to a term of a contract which was allegedly originally breached almost a year and a half before an objection was made to the breach and then to make appellee pay $4,000 a week for each week after the three-month time period had elapsed. The attempt by appellant to enforce a term of a contract which was allegedly breached a year and

four months prior to any objection to that breach can only be seen as appellant's trying "to have his cake and eat it too." If appellant were going to hold appellee to the three-month time period he should have objected within a reasonable time after that period had elapsed. Since he did not, his objection is waived.

The trial court could have found as a matter of law that appellant's delay in objecting to the alleged breach constituted a waiver as a matter of law. Appellant's second assignment of error states that the trial court erred in holding that the credentials committee's deviation from the bylaws was *de minimis* and consented to by the parties. For the foregoing reasons, appellant's second assignment of error is found not well-taken.

In order for an individual to recover on a contract cause of action, it is necessary to show that that individual has been damaged by a breach of the contract. Assuming *arguendo* that there was a binding contract between appellee and appellant and that a term of that contract was that the credentials committee had to make a recommendation of appointment or non-appointment within three months of submission of appellant's application, and that that term was not waived, there still remains the issue of what damage was incurred by appellant. For his fourth assignment of error, appellant contends that the trial court erred in holding that appellant could not recover monetary damages. Appellee argued that monetary damages were not the appropriate remedy and that if there were any remedies, it would be in the manner of injunctive relief. Appellant's fourth assignment of error will fall not on the basis that an injunction is the proper remedy but because he incurred no damages at all.

In order to show that appellant was damaged by the assumed breach of the bylaws, he would have to show that the credentials committee would have recommended him for appointment within the three-month period. If the committee would not have recommended him within that three-month period, then it is hard to see how he could be damaged by any delay in that decision. There were no facts presented to the trial court tending to show that appellant would have been appointed to the hospital staff within the three-month period following submission of appellant's application. In fact, all the evidence seemed to suggest that if the committee had been forced to make the recommendation before September 15, 1982, it would have recommended that appellant not be appointed. The undisputed evidence showed that appellant had not utilized his past staff privileges since 1976. Furthermore, it showed that appellant had not attended any bimonthly staff meetings from 1977 until November 1982. But most damaging of all was the fact that the committee had before it evidence of two malpractice arbitration awards issued against appellant for his negligence in causing the deaths of two of his past patients. Additionally, there was a third malpractice claim arising out of the death of another of appellant's patients which was pending during September 1982. This evidence shows that appellant certainly would not have been recommended for reappointment to the staff at appellee hospital without any additional information regarding his retraining subsequent to his activities which gave rise to the above malpractice claims.

The trial court could have found that appellant produced no evidence showing that he was damaged by the credentials committee's failure to make a recommendation within the prescribed three-month period and that appellant was not entitled to relief as a matter of law. Accordingly, we find appellant's fourth assignment of error not well-taken.

From the foregoing analysis it is ob-

vious that appellant never had a valid cause of action. Appellee figuratively bent over backwards to afford appellant due process in his application for reappointment. The staff and employees of appellee hospital made every effort to ascertain whether appellant was a sufficiently competent anesthesiologist to be reappointed to the staff. He was accorded a full hearing in front of the fair hearing review committee and also had an opportunity to present his argument again, with legal counsel, when he appealed to the board of trustees. It would have been much easier for appellee to have denied appellant's application within the original three-month time period and avoided any litigation. Appellee is only to be commended for its diligent efforts and hopefully will not be dissuaded by this recent experience from affording physicians in the future the same courtesy and respect that it afforded appellant here.

In view of our finding that the trial court could have found as a matter of law that (a) there was no binding contract between appellant and appellee; (b) that the three-month time limit was not part of the alleged contract; (c) that appellant waived the three-month time limit; or (d) that appellant offered no proof of damages, it is clear that appellant was not entitled to judgment as a matter of law and his summary judgment was properly denied by the trial court. Therefore, we find that appellant's fifth assignment of error is not well-taken.

On consideration whereof, we find that substantial justice had been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

THIERRY, J., concurs.

CONNORS, P.J., dissents.

THIERRY, J. of the Ottawa County Court of Common Pleas, sitting by assignment in the Sixth Appellate District.

CONNORS, P.J. I respectfully dissent for the following reasons.

On June 15, 1982, appellant, who is a licensed anesthesiologist, applied for reappointment to the staff of Flower Hospital. The appellant had not performed any medical procedures at said hospital for several years. Pursuant to Flower Hospital's staff bylaws, the application was assigned to the Credentials and Professional Relations Committee, (hereinafter referred to as "credentials committee") for investigation and recommendation to the executive committee. On September 8 and 16, 1982, the credentials committee determined that additional information was needed before a recommendation could be made on the reappointment application. On February 17, 1983, the credentials committee sent a letter to appellant advising him that it was still reviewing his reappointment application. Thereafter, on a date which is not apparent from an examination of the record, the credentials committee recommended that the appellant be reappointed under proctorship for his first twenty cases. However, on May 2, 1983, the executive committee rejected the credentials committee's recommendation and instead notified appellant that he had been denied reappointment to the Flower Hospital staff. Appellant then availed himself of all the appeals provided by the staff bylaws. The appeals consisted of a fair hearing review and an appeal to the board of trustees. The board of trustees voted not to reappoint the appellant.

Appellant then filed a complaint for damages in the Lucas County Court of Common Pleas alleging damages due to the hospital's failure to complete its review of his application within the time

period required by the Flower Hospital staff bylaws. The common pleas court granted summary judgment for appellee and this appeal followed.

Appellant cites as his assignments of error all of the grounds offered by appellee to support its motion for summary judgment. The assignments of error are stated in the majority's opinion.

The relevant portions of Flower Hospital's staff bylaws are as follows:

"3.2.2 The following procedure shall be followed in order in processing *all* applications for Medical Staff membership:

"3.2.2.1 Any doctor of medicine, osteopathy, dentistry and/or podiatry desiring membership must request an application from the president of the hospital.

"3.2.2.2 The application shall be fully completed and returned to the hospital and will be referred to the Credentials and Professional Relations Committee for investigation of credentials and recommendations. *Action on application shall be completed within three (3) months.*" (Emphasis added.)

In determining whether a motion for a summary judgment should be granted, all Ohio courts are required to apply the tripartite test outlined in *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. In that case, the Ohio Supreme Court stated at 66, 8 O.O. 3d at 74, 375 N.E. 2d at 47, that:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

This court must apply the above test in assessing the propriety of the lower court's action.

Applying the first prong of the *Harless* test to the facts of this case, I note that it is unclear from the language of the quoted section of the bylaws whether the three-month restriction applies only to the credentials committee's actions or the actions of the executive committee and the board of trustees also. However, even if the section is interpreted to apply only to the credentials committee, there is evidence in the record that the credentials committee had not completed its action on the application as late as February 17, 1983, eight months after the reappointment application was filed. The extent of the deviation from the bylaws is a material issue of fact that has a direct bearing on the extent of the appellant's damages. To determine the extent of deviation, more evidence must be offered to establish the scope of the three-month time requirement.

The arguments set forth in support of assigments of error numbers one through four in essence raise a question as to whether the appellee was entitled to judgment as a matter of law. Therefore, assignments of error numbers one through four will be addressed together on application of the second prong of the *Harless* test.

At the outset I am compelled to clarify that appellant does not now, nor did he below, question the merits of appellee's decision not to reappoint him. Rather, appellant's complaint is based on contract theory due to the hospital's failure to adhere to its own staff bylaws.

My independent examination of the relevant statutory and case law indicates that appellee was not entitled to judgment as a matter of law. R.C. 3701.351(A) mandates that all hospitals are to set reasonable standards and procedures by which to appoint and reappoint qualified physicians to their staffs. While the statute necessarily grants

broad discretion to hospitals in determining what those standards and procedures are to be, the section would have little meaning if hospitals could routinely deviate, in this case quite significantly, from the bylaws they adopt. Appellee relies heavily on *Khan v. Suburban Community Hospital* (1976), 45 Ohio St. 2d 39, 74 O.O. 2d 56, 340 N.E. 2d 398, as standing for the proposition that courts cannot substitute their judgment for that of a hospital board of trustees with regard to the appointment of qualified physicians. Appellee ignores the fact that that is not the issue properly before this court. Furthermore, *Khan* itself qualifies its holding by stating that the hospital's broad discretion must comport with procedural requirements. I agree with the holding of *Gotsis* v. *Lorain Community Hospital* (1974), 46 Ohio App. 2d 8, 75 O.O. 2d 18, 345 N.E. 2d 641, that if a hospital adopts bylaws it must follow them. I would hesitate to scrutinize staff appointment decisions that might vary from bylaw time restrictions by a minimal amount of time. However, this case does not involve a mere one-day delay, but rather an eight-month delay. In this case, appellant waited almost one year to learn that he had been denied reappointment. He is entitled to attempt to show his damages, resulting from the breach of the hospital's staff bylaws. It is, therefore, clear that appellee was not entitled to judgment as a matter of law. Accordingly, I would find appellant's assignments of error numbers one through four well-taken.

Assignment of error number five asserts that the court below erred in denying appellant's motion for summary judgment. For the reasons cited above, and as there remains an issue of fact, I would find the fifth assignment of error not well-taken.

For the foregoing reasons, I would reverse the judgment of the trial court and remand this case for further proceedings.